No. 41,732

Evelyn Jacobson, Steven Jacobson, Connie Jacobson, Kenneth Jacobson, minors by Evelyn Jacobson, their Mother and Next Friend, *Appellants*, v. Albert S. Parrill, *Appellee.*

(351 P. 2d 194)

Opinion filed April 9, 1960.

*Evart Mills,* of McPherson, argued the cause, and *E. W. Jernberg,* of Lindsborg, was with him on the briefs for appellants.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark* and *T. M. Lillard, Jr.,* of Salina, were with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: On February 19, 1957, Evelyn Jacobson commenced this action in the district court of Saline County on behalf of herself and as mother and next friend of her three minor children, to recover damages in the amount of $25,000 for the wrongful death of John A. Jacobson, the husband and father. The appeal is from an order sustaining the defendant's motion to strike portions of the plaintiffs' reply, which the trial court considered as tantamount to a demurrer searching the entire record, and entered judgment for the defendant.

On January 23, 1957, John A. Jacobson was killed in an automobile collision between his car and one owned by the defendant, Albert S. Parrill, and driven by Fred E. Cochran who was also killed in the collision. The accident occurred at about 7:10 a. m. approximately three miles south of Lindsborg, McPherson County, Kansas, on U. S. Highway No. 81.

Parrill and Cochran were in military service and stationed at Schilling Air Force Base near Salina, Kansas. On the evening of January 22, 1957, they left the air base for Wichita in Parrill's automobile and were returning for duty the next morning when the collision occurred. Before leaving Wichita, Parrill stated he felt sleepy and requested Cochran to drive; Cochran stated he felt pretty good.

When the action was commenced, the defendant Parrill was nineteen years of age and was a resident of the state of Maryland. At the time of his death Cochran was also nineteen years of age and was a resident of the state of Pennsylvania.

In deciding this controversy, the plaintiffs are hereafter referred to Evelyn Jacobson, or the plaintiff.

The plaintiff's petition, which was filed against Parrill alone, sought recovery upon an alleged derivative liability of Parrill under the doctrine of *respondeat superior* for the active tort of Cochran in driving Parrill's automobile. The sole act of negligence alleged in the petition was that Cochran negligently drove Parrill's automobile onto the wrong side of the road causing a head-on collision with the automobile owned and driven by Jacobson, causing his death. No active tort of Parrill was alleged. In his answer Parrill admitted Cochran was driving his automobile.

After the petition was filed, a question arose whether Parrill was covered by an insurance policy issued to his stepfather who lived in Maryland. Under the laws of that state, Parrill was a minor until age 21. To obtain a driver's license, Maryland laws require that some adult person sponsor a minor's application and furnish public liability insurance to protect against the minor's negligence in operating a motor vehicle. Prior to induction into military service, Parrill applied for a driver's license and his stepfather sponsored his application and furnished an insurance policy written by the Harleysville Mutual Casualty Company in the required amount.

A declaratory judgment action was commenced in Anne Arundel County, Maryland, to resolve the question whether the Maryland

policy afforded insurance coverage to Parrill with respect to plaintiff's action pending against him in Saline County. If the Maryland policy was ineffective, then Jacobson's own liability policy would pay the plaintiff an additional $5,000. On September 16, 1957, plaintiff and her counsel consented that the district court of Saline County enter an order extending the defendant's time to plead until the Maryland declaratory judgment action could be determined. However, on November 21, 1957, the plaintiff attempted to compel the defendant to plead by filing a motion to vacate such order, but the motion was overruled.

Thereafter, while the Maryland declaratory judgment action was still pending and undetermined, the plaintiff commenced an ancillary proceeding in the probate court of McPherson County to administer local assets of the estate of Fred E. Cochran, deceased. Following the appointment of an administrator, plaintiff filed a petition for allowance of demand against Cochran's estate in the amount of $25,000 based upon the collision and wrongful death of John A. Jacobson on January 23, 1957, and generally made the same allegations with respect to Cochran's negligence as those contained in her petition against Parrill in the district court of Saline County. The proceeding was transferred to the district court of McPherson County (G. S. 1959 Supp. 59-2402a), where the administrator filed his answer consisting of a general denial and an affirmative allegation of contributory negligence on the part of Jacobson.

Thereafter, The Fidelity and Casualty Company of New York commenced an action in the United States District Court for the District of Kansas against the administrator and the plaintiff, alleging that the appointment of the administrator was void, and that it had no liability to Cochran's estate pursuant to the terms and conditions of an indemnity insurance policy issued to Cochran's father in the state of Pennsylvania; that it was not obligated to defend such estate or pay any judgment, and asked for a declaratory judgment relieving it of liability.

Following negotiations and on May 23, 1958, Evelyn Jacobson orally agreed to a compromise and settlement with Cochran's estate and The Fidelity and Casualty Company of New York upon payment of the sum of $5,000, upon the theory that Fred E. Cochran, deceased, was an additional insured under the terms of the indemnity policy issued to his father.

On May 28, 1958, during the April term, the district court of Mc-

Pherson County entered a judgment which recited that the cause came regularly on for hearing; that evidence was introduced, and that the court, after considering the evidence, found that a bona fide dispute and controversy existed; that the parties had agreed to compromise and settle such controversy and had agreed upon a settlement, the terms of which provided that the plaintiff would be paid the sum of $5,000 in compromise of the cause of action for John A. Jacobson's wrongful death, for the use and benefit of herself and the three minor children, and that she have judgment against the estate of Fred E. Cochran, deceased, the active tort-feasor, in that amount and for costs of the action. The judgment further provided that such sum, when paid to the clerk of the court, would be full satisfaction of all claims, past, present and future of the petitioners against Cochran's estate and the insurance company and would fully release and discharge each from any further liability to the plaintiff.

On the same day the judgment was rendered, Evelyn Jacobson accepted the $5,000 as full payment and satisfaction, and the judgment was released of record. At the same time, she signed an instrument entitled "Full Settlement Release and Indemnification Agreement" by which she discharged and indemnified Cochran's estate from all claims arising out of the automobile collision on January 23, 1957. On that same day, the probate court closed Cochran's estate and discharged the administrator. The declaratory judgment action in the United States District Court was dismissed a few days later.

The pertinent portions of the release and indemnity agreement signed by Evelyn Jacobson read:

". . . IN CONSIDERATION OF THE PAYMENT . . . of the judgment entered . . . in favor of Evelyn Jacobson, Steven Jacobson, Connie Jacobson and Kenneth Jacobson in the total amount of Five Thousand Dollars ($5,000.00) against the estate of Fred E. Cochran, deceased, and The Fidelity and Casualty Company of New York in Case No. 21654, *the payment and adequacy of which judgment is hereby acknowledged,* I do hereby release, acquit and forever discharge the estate of Fred E. Cochran, deceased . . . and The Fidelity and Casualty Company of New York of and from all manner of actions, suits, claims for damage, loss or expense which I or Steven Jacobson, Connie Jacobson and Kenneth Jacobson may have or make and *which may be traced, either directly or indirectly, to the aforesaid accident as now appearing or may appear at any time in the future no matter how remotely they may be related to the aforesaid accident. . . . The undersigned specifically reserves all of her rights against Albert S. Parrill.*

"In Further Consideration of the aforesaid payment, I, the undersigned, Evelyn Jacobson, *do hereby expressly stipulate and agree to indemnify and hold forever harmless the estate of Fred E. Cochran, deceased, and all administrators, personal representatives, successors and assigns of Fred E. Cochran, deceased,* and The Fidelity and Casualty Company of New York *from any and all present, past and future claims, demands or actions that may hereafter, at any time, be made or brought against said estate, administrators, personal representatives, assigns* and said insurance company by Steven Jacobson, Connie Jacobson, Kenneth Jacobson *or by anyone on their behalf, or by any person, firm or business entity for any loss, damage or expense for the death of John Jacobson, the damage to said automobile or any claims arising through, out of or related to said death, damages therefor or related thereto, or in any way related to the damage to said automobile.*

"I, the undersigned, Evelyn Jacobson, understand and agree . . . that in signing this release, I am acting upon independent judgment and the advice of . . . my attorneys." (Emphasis supplied.)

On October 23, 1958, immediately after the Maryland declaratory judgment held that the insurance policy issued to Parrill's stepfather made Parrill's auto "an insured automobile" at the time of the collision in which Jacobson was killed, Parrill filed his answer in the district court of Saline County denying that he was guilty of any negligence whatsoever proximately causing the collision and Jacobson's death, and pleaded the aforesaid judgment of the district court of McPherson County against the estate of Fred E. Cochran, deceased, and the satisfaction thereof in complete bar and extinguishment of plaintiff's action against him for derivative liability. The plaintiff filed a motion to strike that portion of Parrill's answer, which was overruled.

Thereafter, and on November 14, 1958, more than three weeks after Parrill's answer was filed and approximately six months after the judgment was fully satisfied, at the October term of the district court of McPherson County, the plaintiff, without notice to Parrill, obtained an order *nunc pro tunc* amending and correcting the journal entry of judgment entered May 28, 1958, by adding thereto a new paragraph, the pertinent portion of which reads:

"The Court Further Finds and Orders that . . . the judgment for $5,000.00 rendered herein . . . is not intended as a release of any other person or persons . . . and that as a part of this settlement Evelyn Jacobson, Steven Jacobson, Connie Jacobson and Kenneth Jacobson have specifically reserved and retained their rights to prosecute an action in the District Court of Saline County, Kansas entitled 'Evelyn Jacobson, et al vs. Albert S. Parrill, Case No. 21,345.'"

On December 2, 1958, the plaintiff filed a reply denying all new matters contained in the defendant's answer, and attached a copy

of the complaint filed by The Fidelity and Casualty Company of New York in the United States District Court against the administrator of Cochran's estate and Evelyn Jacobson. The reply affirmatively alleged the compromise settlement of plaintiff's claim against Cochran's estate and The Fidelity and Casualty Company of New York on May 23, 1958; the terms of that settlement; the entry of judgment in plaintiff's favor in the district court of McPherson County on May 28, 1958; the execution of the Full Settlement Release and Indemnification Agreement, and attached a copy of that instrument; the entry of the order *nunc pro tunc* by the district court of McPherson County on November 14, 1958, and attached a copy of that journal entry, and renewed the prayer for judgment set forth in her petition.

On December 6, 1958, Parrill filed a motion to strike all of that part of the plaintiff's reply with respect to the complaint and dismissal of the federal district court action; all of paragraphs 3 and 4 of the reply referring to the oral compromise settlement of May 23, 1958, and alleged that the plaintiff's written release and indemnity agreement of May 28, 1958, covered the same subject matter; and further, that all of paragraph 6 of the reply and the copy of the order *nunc pro tunc* of November 14, 1958, attached thereto, be stricken upon the ground that the same was null and void, was redundant, irrelevant and prejudicial to the rights of the defendant.

On July 6, 1959, the trial court, after hearing full argument of counsel, sustained the defendant's motion to strike in its entirety, and entered judgment in favor of the defendant; hence, this appeal.

The plaintiff concedes in her brief that the legal relationship existing between Cochran and Parrill was that of principal and agent. As previously indicated, the sole act of negligence alleged in the petition was that Cochran negligently drove Parrill's automobile onto the wrong side of the road causing the collision which killed Jacobson. Thus, all the damages for which the plaintiff seeks compensation were allegedly caused by the active tort of Cochran, the agent-driver. No allegations of negligence were made against Parrill, and it is only by virtue of the doctrine of *respondeat superior*, that is, that the negligence of Cochran as agent was imputed to Parrill as principal, that Parrill was allegedly liable for any damages at all.

Basically, there is no distinction to be drawn between the liability of a principal for the tortious acts of his agent and the lia-

bility of a master for the tortious acts of his servant. While reference here is made only to the relation of master and servant, it also pertains to the relation of principal and agent. In either instance, the liability is grounded upon the doctrine of *respondeat superior* (2 Am. Jur., Agency, § 359, p. 278; 77 C. J. S., Respondeat Superior, pp. 317-320). It has been held that under that doctrine the liability of the master to a third person for injuries inflicted by a servant in the course of his employment and within the scope of his authority, is derivative and secondary, while that of the servant is primary, and absent any delict of the master other than through the servant, the exoneration of the servant removes the foundation upon which to impute negligence to the master. (*Cox v. Shreveport Packing Co.*, 213 La. 53, 34 So. 2d 373; *Shaver v. Express Corp.*, 163 O. S. 484, 127 N. E. 2d 355; *Stulginski v. Cizauskas*, 125 Conn. 293, 5 A. 2d 10; *State ex rel. Shell Petroleum Corp. v. Hostetter*, 348 Mo. 841, 156 S. W. 2d 673; 57 C. J. S., Master and Servant, § 570c, p. 299; *Giles v. Smith*, 80 Ga. App. 540, 56 S. E. 2d 860; *Roadway Express Inc. v. McBroom*, 61 Ga. App. 223, 6 S. E. 2d 460; *Pangburn v. Buick Motor Co.*, 211 N. Y. 228, 105 N. E. 423; *Thompson v. Lassiter*, 246 N. C. 34, 97 S. E. 2d 492.) Although factually dissimilar, see, *Richardson v. Erwin*, 174 Kan. 314, 255 P. 2d 641.

While this court has held that a master may be jointly sued with the servant for a tort of the latter committed within the scope of his authority or employment (*Dowell v. Railway Co.*, 83 Kan. 562, 112 P. 136; *Duensing v. Leamon*, 152 Kan. 42, 102 P. 992; *Rush v. Concrete Materials & Construction Co.*, 172 Kan. 70, 238 P. 2d 704; *Russell v. American Rock Crusher Co.*, 181 Kan. 891, 317 P. 2d 847), they are not joint tort-feasors in the sense that they are equal wrongdoers without right of contribution, for the master may recover from the servant the amount of loss caused to him by the tort, including any sum he has been required to pay a third person on account of it (*Fenly v. Revell*, 170 Kan. 705, 228 P. 2d 905); such payments made by the master, in the absence of fault on his part, are not made by him as a wrongdoer, but by reason of his obligation to answer for the act of the servant. The liability of the servant, on the other hand, arises wholly because of his personal act in doing the wrong; it does not arise out of the relation of master and servant, but exists upon the common law obligation that every person must so act or use that which he

controls, as not to injure another. (*Wells v. Hansen,* 97 Kan. 305, 309, 154 P. 1033; *Russell v. American Rock Crusher Co.,* supra, p. 895.)

Because of the doctrine of *respondeat superior,* the liability of Cochran and Parrill for all of the damages allegedly sustained by the plaintiff was joint or several, and while she could have sued either separately or both jointly, she elected, during the pendency of her action against Parrill, to sue Cochran's estate for all the damages allegedly resulting from his negligence and recovered a judgment for $5,000 and costs. No allegations were made for punitive damages in her proceeding in the probate court or in the instant case, and upon no reasonable basis could Parrill's liability to the plaintiff for compensatory damages be any greater than Cochran's liability for his wrongful act. Under the record presented and the rules just announced, Cochran, as the agent-driver and as the active tort-feasor, was primarily liable to the plaintiff because of his active negligence in killing the decedent, and, while Parrill was also liable, his liability was derivative or secondary, and was imputed only under the doctrine of *respondeat superior.* Had the petition alleged Parrill committed some independent or concurrent tortious act contributing to the death of Jacobson, his liability to the plaintiff would have been direct, and not imputed under the doctrine of *respondeat superior.* But, no such allegations were made.

It does not appear this court has previously decided the question, but by the weight of authority of courts of this country which have considered the matter, a judgment against an active tort-feasor establishes the full limit of liability against other persons who are only derivatively liable as under the doctrine of *respondeat superior* for the active tort-feasor's wrongful act (*King v. Unger,* 35 C. A. (2d) 192, 94 P. 2d 1040; *Jenkins v. So. Ry. Co.,* 130 S. C. 180, 125 S. E. 912; *Bradford v. Brock,* 140 Cal. App. 47, 34 P. 2d 1048; *Pinnix v. Griffin,* 221 N. C. 348, 20 S. E. 2d 366, 141 A. L. R. 1164; *All v. Delaware & H. R. Corporation,* 29 N. Y. S. 2d 439; *Sarine v. American Lumbermen's Mut. Casualty Co.,* 17 N. Y. S. 2d 754; *Blue Valley Creamery Co. v. Cronimus,* 270 Ky. 496, 110 S. W. 2d 286; *Daniel v. Jones,* 140 Cal. App. 145, 35 P. 2d 198; 52 Am. Jur., Torts, § 129, p. 466; *Siebrand v. Gossnell,* 234 F. 2d 81; *Betcher v. McChesney Appellant,* 255 Pa. 394, 100 A. 124), and the satisfaction of such a judgment extinguishes any right of action for derivative liability. (*Pinnix v.*

*Griffin,* supra; *Herron v. Youngstown,* 136 O. S. 190, 24 N. E. 2d 708; *Losito v. Kruse, Jr.,* 136 O. S. 183, 24 N. E. 2d 705; *Thompson v. Lassiter,* supra; *Granquist v. Crystal Springs Lbr. Co.,* 190 Miss. 572, 1 So. 2d 216; 50 C. J. S., Judgments, § 757, p. 279; *Lindsey v. Danville,* 46 Vt. 144; Freeman on Judgments, Fifth Edition, § 469, p. 1031.)

Clearly, under the allegations of the petition, Parrill did nothing to cause the plaintiff to suffer any more damages than were caused by the alleged active tort of Cochran, and the amount of those damages were established by the judgment against Cochran's estate. The admitted full satisfaction of that judgment fully extinguished the cause of action for Cochran's wrongful act, which is a bar to the plaintiff's prosecution of the present purely derivative liability action against Parrill. Our cases dealing with the release of joint, concurring or successive tort-feasors and the reservation of rights against the others (*Edens v. Fletcher,* 79 Kan. 139, 98 P. 784; *City of Topeka v. Brooks,* 99 Kan. 643, 164 P. 285; *Feighley v. Milling Co.,* 100 Kan. 430, 165 P. 276; *Jukes v. North American Van Lines,* 181 Kan. 12, 309 P. 2d 692; *Milwaukee Ins. Co. v. Gas Service Co.,* 185 Kan. 604, 347 P. 2d 394) are inapplicable to the question presented in this appeal.

The plaintiff contends her rights to proceed against Parrill in the instant action were reserved to her by the McPherson County district court's judgment and order *nunc pro tunc.* We are not persuaded. In the instant action Evelyn Jacobson specifically pleaded that, as the surviving spouse of John A. Jacobson, she had the exclusive right to recover damages for the benefit of herself and the minor children, and that no personal representative of his estate had been appointed. We think the plaintiff, because of the indemnity agreement, cannot be permitted to say she did not intend to release Parrill from the alleged derivative liability after she obtained full satisfaction of her judgment against the active tort-feasor's estate. For all damages Parrill would be compelled to pay in the instant action, he would immediately, under the doctrine of subrogation, become entitled to full indemnity and restitution against Cochran's estate and Cochran's insurer, The Fidelity and Casualty Company of New York. (*Fenly v. Revell,* 170 Kan. 705, 228 P. 2d 905; 50 Am. Jur., Subrogation, §§ 36, 38, pp. 706, 707; Restatement of the Law, Restitution, § 96, p. 418.) But, by the express terms of the indemnity agreement which she pleaded in her reply,

the plaintiff agreed to hold harmless Cochran's estate and The Fidelity and Casualty Company of New York from all future liability. If, as she contends, she did not intend to release and discharge the derivative liability of Parrill, thus permitting her to proceed with the instant action, she would ultimately be required, by virtue of her indemnity agreement, to reimburse Parrill; consequently, she would be traveling in a complete circle, and would realize no financial benefit. While the plaintiff provided in her release that "the undersigned specifically reserves all of her rights against Albert S. Parrill," the expression in the instrument to indemnify Cochran's estate, his personal representative, and The Fidelity and Casualty Company of New York from all future claims arising out of the collision and John A. Jacobson's death, was inconsistent with the retention of such rights, and the only rational interpretation of her release and indemnity agreement is that she did intend, by accepting full satisfaction of the judgment against Cochran's estate, to release and discharge the derivative liability which is the subject matter of the instant action.

Moreover, the principal question is not what the plaintiff intended, but rather, whether she has a legal right to maintain the action. Assuming, *arguendo*, that the plaintiff's release reserved to her all the rights she possessed at that time, and that the order *nunc pro tunc*, which, concededly, was much broader than the reservation contained in the release, was also sufficient to reserve to her all the rights she possessed, we think when she accepted full satisfaction of the judgment against Cochran's estate, she had no rights to reserve. A similar situation was presented in *Rasnic v. City of Wichita*, 126 Kan. 98, 267 P. 21, and it was held that the release of the electric company, the active tort-feasor, released the city from liability for the same injuries. See, also, *Cain v. Quannah Light & Ice Co.*, 131 Okla. 25, 267 P. 641; *Blake v. Kansas City Southern Ry. Co.*, 38 Tex. Civ. App. 337, 85 S. W. 430; *Eberle v. Sinclair Prairie Oil Co.*, 120 F. 2d 746, 135 A. L. R. 1494; *Vattani v. Damiano*, 9 N. J. Mis. R. 290, 153 A. 841, and *Ford Motor Company v. Tomlinson*, 229 F. 2d 873.

The plaintiff raises the question whether a district court has jurisdiction in a wrongful death action to approve a settlement with minor children and enter judgment accordingly. She refers to G. S. 1949, 59-301, and asserts the probate court has original jurisdiction in all matters pertaining to the estates of minors and that it

is empowered "to make all necessary orders relating to their estate," and contends that Evelyn Jacobson could not bar her minor children from prosecuting their claim for damages against Parrill, except upon the specific approval of the proper probate court. The point is not well taken. Since 1918, when *Jefferies v. Mercantile and Elevator Co.*, 103 Kan. 786, 176 P. 631, was decided, the district courts have continuously exercised jurisdiction to enter compromise settlement judgments of wrongful death actions brought by surviving spouses for the benefit of themselves and minor children, and as that case has stood as the settled law of this state for over 40 years we see no reason why it should now be changed. Nor do we impute to the legislature any intention to do so by the enactment of the probate code.

In conclusion, it was not the rendition of the judgment in the district court of McPherson County, pleaded in the defendant's answer, which operated as a bar to plaintiff's right to maintain the instant action—it was the full satisfaction of that judgment which extinguished her right of action against Parrill as a matter of law.

Other points have been raised, but in view of what has been said it is unnecessary to discuss them.

The judgment is affirmed.